IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIAN MARRERO, SR.,** | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-24-3311** |
| **v.** | * | |
| **VERIZON MARYLAND LLC,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Brian Marrero, Sr. ("Plaintiff") brings this civil action against Verizon Maryland LLC ("Defendant"), alleging various violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, and the Maryland Fair Employment Practices Act. ECF No. 1. Defendant filed a Motion to Dismiss, ECF No. 24, which is fully briefed, *see* ECF Nos. 27 & 28. A hearing is not necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained below, Defendant's motion shall be granted in part and denied in part.

## I. BACKGROUND

Plainitff is a Hispanic male from Puerto Rico and a disabled veteran. ECF No. 1 ("Compl.") ¶ 1. Defendant hired Plaintiff for the position of Construction Cable Splicer on January 8, 2001, and Plaintiff later became an Installation Cable Splicer. *Id.* ¶ 7.

In 2020, Plaintiff injured his back while on the job. *Id.* ¶ 19. Plaintiff requested, as an accommodation, to be assigned copper maintenance work instead of fiber-optic installations

because his injuries prevented him from remaining in one position for extended periods. *Id.* ¶¶ 18, 19. In addition, Plaintiff asked to be assigned outside work instead of inside work because outside work required "less use of his knees." *Id.* Plaintiff's requests were denied. *Id.* Plaintiff alleges that similarly situated employees who were not disabled and were not Hispanic or Puerto Rican generally received such accommodations. *Id.* ¶ 18. And although Plaintiff requested "more time off" to recover from his injuries, Defendant required him to return to work before he had fully recovered from his back injuries. *Id.* ¶ 19. Defendant eventually placed Plaintiff on light duty "for a couple of months," but Plaintiff was returned to full-duty work in approximately August 2020, before he was medically able to resume those responsibilities. *Id.*

On or about February 12, 2022, Plaintiff filed a charge of disability discrimination with the EEOC ("Charge 1") against Defendant based on "some harassment issues" he experienced from a supervisor. *Id.* ¶¶ 16, 20. Plaintiff alleges that, before filing Charge 1, he began experiencing discriminatory treatment, including exclusion from work-related meetings. *Id.* ¶ 17. According to Plaintiff, coworkers told him that "nobody would want to work with him because he had a spotlight on him" and commented "various other things" that suggested they were aware of information contained in his confidential personnel file. *Id.*

After Plaintiff filed Charge 1, his supervisor was "switched" to Curtis Watson, an African American. *Id.* ¶ 20. From August 2022 through March 2023, Watson excluded Plaintiff from meetings, publicly belittled him, and unfairly criticized his work. *Id.* ¶ 21. Plaintiff identifies several examples. In October 2022, Defendant held a luncheon at a barbeque restaurant to recognize employees for avoiding safety incidents. *Id.* ¶ 22. Watson told Plaintiff that he would not be assigned work during the event, but Plaintiff was subsequently assigned work that prevented him from attending. *Id.* When Plaintiff raised the issue, Watson did not respond. *Id.* In December

2022, Plaintiff was told he could attend a company Christmas party "but only stay 30 minutes, because he worked late tour and wasn't off till seven." *Id.* Watson also excluded Plaintiff from recognition during weekly team meetings. According to Plaintiff, customer "accommodations"[1] received by technicians were announced during Thursday video conferences, but Watson never announced any that Plaintiff received, which Plainitff knows he received. *Id.*

On or about April 7, 2023, Plaintiff and Watson were involved in a physical confrontation at a job site. *Id.* ¶ 24. Watson arrived unexpectedly at the site and confronted Plaintiff about his use of a personal cell phone. *Id.* When Plaintiff responded that the applicable rule prohibited cell phone use only inside a customer's building, Watson allegedly pushed him. *Id.* Plaintiff reported the incident to area manager Scott McInery. *Id.* ¶¶ 14, 24.

McInery initiated an investigation on April 13, 2023. *Id.* ¶ 25. Plaintiff alleges that the investigation focused on finding misconduct by Plaintiff rather than addressing Watson's conduct. *Id.* Believing the investigation was unfair, Plaintiff reported both the incident and the investigation to Defendant's Human Resources department through the company's internal reporting system. *Id.* Plaintiff alleges that Defendant took no corrective action. *Id.*

On or about April 21, 2023, Plaintiff injured his back, and Defendant suspended him indefinitely with no rationale nor any paperwork. *Id.* ¶ 26. When Plaintiff asked why, he was told that the suspension related both to the ongoing investigation and his injury. *Id.* Plaintiff again reported the matter to Human Resources, but no corrective action was taken. *Id.*

Three days later, on April 24, 2023, Plaintiff's supervisor allegedly attempted to suspend him for a January 2023 incident. *Id.* ¶ 27. Despite the fact that Plaintiff was already on indefinite suspension, the supervisor pressured him to accept a disciplinary memorandum in his personnel

[1] The Court infers that Plaintiff intended to state "commendations" instead of "accommodations" here.

file and threatened suspension if he refused. *Id.* Plaintiff contacted his union and filed another complaint through Defendant's internal reporting system. *Id.* Again, no corrective action was taken. *Id.*

Plaintiff filed for workers' compensation benefits on or about April 30, 2023. *Id.* ¶ 28.

On May 11, 2023, Watson allegedly pressured a union steward to persuade Plaintiff to accept a written disciplinary notice. *Id.* ¶ 29. Plaintiff supplemented his earlier Human Resources complaint, but Defendant again failed to take corrective action. *Id.*

On May 30, 2023, Defendant imposed a ten-day suspension on Plaintiff for alleged misconduct occurring on January 3, 2023, even though Plaintiff remained on indefinite suspension at the time. *Id.* ¶ 30. Later that same day, Defendant terminated Plaintiff's employment, citing alleged violations of Defendant's Code of Conduct and Work Rules arising from the April 7, 2023, incident with Watson. *Id.* ¶ 31.

On October 15, 2023, Plaintiff filed a second EEOC charge ("Charge 2") against Defendant, alleging retaliation for filing Charge 1. *See id.* ¶ 5; ECF No. 23-5 (Exhibit 3). Charge 2 stated:

> I began my employment with the above-named Respondent on January 8th, 2001 as s [sic] Construction Cable Splicer and later became an Installation Cable Splicer. In 2022, I filed EEOC charge no. 531-2022-00383 against Respondent in which I alleged disability discrimination. Since August 2022, I was subjected to exclusion from meetings and events by Respondent. I would also be constantly belittled and criticized for my work performance by Respondent. Since November 2022, supervisor Curtis Watson would appear at work sites I was assigned to and embarrassed me in front of customers. I would report this treatment to Respondent but received no assistance. Around April 30th, 2023, I was injured while working for Respondent and was suspended indefinitely. On May 30th, 2023, I was discharged.

> Respondent failed to take corrective action to address the other treatment to which I was subjected.
>
> I believe I was retaliated against for engaging in protected activity with respect to harassment, suspension and discharge and violation of the Americans with Disabilities act of 1990, as amended by the Americans with Disabilities act amendments act of 2008.

ECF No. 23-5 (Exhibit 3).

On August 20, 2024, the EEOC's Baltimore Field Office mailed Plaintiff a Notice of Right to Sue. Compl. ¶ 5. Plaintiff filed this action on November 15, 2024, asserting thirteen causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973, and the Maryland Fair Employment Practices Act ("MFEPA"). *Id.*

On September 26, 2025, Defendant moved to dismiss the Complaint after withdrawing its earlier partial motion to dismiss. *See* ECF Nos. 23, 24. Plainitff opposed the motion, ECF No. 27, and Defendant filed a reply on November 21, 2025. ECF No. 28

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. "To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in [Rule] 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted).

In ruling on such a motion, the court accepts all factual allegations in the complaint as true but does not defer to legal conclusions drawn from those facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). A complaint must allege "a plausible

claim for relief[,]" *id.* at 679, which means it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, when a Rule 12(b)(6) motion is filed, the court's review is limited to the allegations in the complaint, documents that are incorporated into the complaint by reference, and documents attached to the complaint as exhibits. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment." *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at *23 (D. Md. Sept. 15, 2023) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). A court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166).

Additionally, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2007). "[I]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Wooten v. Univ. of Md., Balt.*, 733 F. Supp. 3d 402, 416 (D. Md. 2024) (quoting *Campbell v. Mayorkas*, Civ. No. MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)); *see also Smith-Henry v. Kendall*, Civ. No. GLS-23-2154, 2024 WL 4264905, at *6 (D. Md. Sept. 23, 2024) (citing *Yampierre*, 2023 WL 6049489, at *24); *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)).

## III. DISCUSSION

### A. Timeliness and Exhaustion

#### 1. Timing

Defendant argues that many of Plaintiff's factual allegations and claims are untimely and that Plaintiff failed to exhaust his administrative remedies. ECF No. 24-1 at 10–17. Plaintiff argues that his claims are timely and properly before the Court. ECF No. 27 at 3–5.

The EEOC has initial enforcement responsibility over Title VII claims. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406–07 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). Accordingly, an employee alleging a Title VII violation must first file a charge with the EEOC and exhaust administrative remedies before attempting to bring suit in court. *Balas*, 711 F.3d at 406 (citing 42 U.S.C. § 2000e–5(e)(1)); *see also Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543 (2019). "A[n EEOC] charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)). The ADA and Rehabilitation Act impose "exhaustion requirements and filing procedures" that are "identical to those applicable to claims under Title VII." *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (citing 42 U.S.C. § 12117(a), and 29 U.S.C. § 794a); *see also*

*Sydnor* v. *Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (explaining that the ADA is modeled after Title VII and incorporates its enforcement procedures, including administrative exhaustion requirement); *Smith v. New Life Church*, Civ. No. PX-22-01245, 2022 WL 16540006, at *2 (D. Md. Oct. 28, 2022); *Kim v. Potter*, Civ. No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010), *aff'd*, 416 F. App'x 297 (4th Cir. 2011) (citing 29 U.S.C. § 794a(a)(1), and 29 C.F.R. § 1614.103(a)).

Generally, a complainant is required to file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *see also Fort Bend Cnty.*, 587 U.S. at 544; *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). But, because Maryland is a deferral state, the 180-day period is extended here, and a charge must be filed no more than 300 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *Fort Bend Cnty*, 587 U.S. at 544; *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008). The 300-day requirement also applies to claims under the MFEPA, except for claims of harassment. *See* Md. Code Ann., State Gov't § 20-1004(c)(2)(i). Alleged discriminatory acts that occurred more than 300 days before the filing of administrative charge are time-barred and therefore may not be challenged under Title VII, the ADA, the Rehabilitation Act, or the MFEPA. *See, e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) ("[Plaintiff's Title VII] disparate treatment claims involving conduct that occurred more than 300 days prior to [the date he filed his administrative charge] are untimely."); *Snead*, 815 F. Supp. 2d at 895, n.5 (finding ADA and Rehabilitation Act claims subject to dismissal for lack of proper exhaustion and untimeliness); *Sacks v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. RDB-21-968, 2021 WL 5233752, at *5 (D. Md. Nov. 9, 2021) ("Each of these acts falls outside of the 300-

day limitations period, and any ADA claims based on these acts are therefore untimely."); *Hurley v. Howard Cnty. Dep't of Police*, Civ. No. CJC-25-1498, 2026 WL 864078, at *6 (D. Md. Mar. 30, 2026) (dismissing non-harassment MFEPA claims where administrative charge was filed "beyond the 300-day limitations period").

Here, both parties agree that Charge 2 is the only administrative charge relevant to the timeliness of the instant action. *See* ECF No. 27. at 3 (Plaintiff agreeing that Charge 2 is the "determinative claim"). Plaintiff filed Charge 2 on October 15, 2023. Therefore, only allegations of misconduct that occurred on or after December 19, 2022, (300 days before October 15, 2023) are timely under Title VII, the ADA, and the Rehabilitation Act. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a) (incorporating § 2000e–5); *Valderrama*, 473 F. Supp. 2d at 662 n.4; *Snead*, 815 F. Supp. 2d at 894. And the same time limitation applies to non-harassment claims brought under the MFEPA. *See Green v. iMentor, Inc.*, Civ. No. RDB-24-2567, 2025 WL 2299432, at *6 n.10 (D. Md. Aug. 8, 2025), *reconsideration denied*, 2025 WL 3077594 (D. Md. Nov. 4, 2025) (citing Md. Code Ann., State Gov't § 20-1004(c)(2)).

**2. Exhaustion**

Even after an employee has exhausted the administrative process and receives permission to sue, he is procedurally barred from bringing any Title VII claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . ." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). The allegations in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Chacko*, 429

F.3d at 509 (citation omitted). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.*; *see also Olarewaju v. Allied Universal*, Civ. No. DKC-21-3250, 2022 WL 3027991, at *3 (D. Md. Aug. 1, 2022) (noting that a suit "may not present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC charge").

Courts must keep also in mind, however, that EEOC complaints are commonly made "by those unschooled in the technicalities of formal pleading" and should be construed with the "utmost liberality." *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 440 (D. Md. 2012) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)); *see also Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). "A federal court may hear a claim that was not presented to the EEOC so long as it is reasonably related to plaintiff's EEOC charge and can be expected to follow from a reasonable administrative investigation." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 252 (D. Md. 2023) (cleaned up); *see also Cowgill*, 41 F.4th at 384.

In short, the only claims Plaintiff may assert in this action are those which fall within the scope of Charge 2 or are reasonably related to Charge 2.

**B. Counts I and III: Disability Discrimination**[2]

In Count I and III of the Complaint, Plaintiff asserts claims for disability-based disparate treatment in violation of the ADA and MFEPA, respectively. These counts must be dismissed for failure to state a claim that is timely and plausible.

[2] The parties agree that the Rehabilitation Act claim in Count II should be dismissed. *See* ECF No. 27 at 2 ("Plaintiff does not oppose dismissal of Count Two.").

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). And the MFEPA prohibits employment discrimination based on "disability unrelated in nature and extent so as to reasonably preclude the performance of the employment[.]" Md. Code Ann., State Gov't § 20-606(a)(1)(i). "Generally, to plead a claim of disability discrimination, a plaintiff must allege facts demonstrating that (1) the plaintiff has a disability; (2) the plaintiff was a qualified individual for the position; and (3) the employer took an adverse employment action, such as discharging the plaintiff, because of the disability." *Gagnon v. Bd. of Educ. of Montgomery Cnty.*, 760 F. Supp. 3d 359, 370 (D. Md. 2024) (citing *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015)).[3]

In both Counts I and III, Plaintiff alleges that Defendant discriminated against him based on his disability by treating him less favorably than similarly situated employees, including by denying accommodation requests and subjecting him to a hostile work environment. Compl. ¶¶ 37, 50. Specifically, Plaintiff alleges that after injuring his back in 2020, he requested maintenance work rather than fiber-optic installations because the latter required him to remain in one position for extended periods. *Id.* ¶ 19. He also requested outside assignments rather than inside work because they required less use of his knees. *Id.* ¶ 18. Plaintiff further alleges that Defendant initially provided him with light-duty work but returned him to full duty in approximately August 2020 before he was medically ready to resume those responsibilities. *Id.* ¶ 19.

As discussed above, however, only claims based on employer conduct that occurred on or after December 19, 2022—300 days before Plaintiff filed Charge 2 on October 15, 2023—are timely. Accordingly, Plaintiff's allegations concerning the denial of accommodation requests and

[3] "[T]he Court will jointly evaluate the analogous ADA and MFEPA discrimination claims under the standards applicable to claims under the ADA." *Gagnon*, 2026 WL 1584459, at *4 (citing *Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 214, 220, 223–24 (Md. 2016), and *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011)).

his return to full-duty work in 2020 are time-barred and cannot support his disability discrimination claims.

Plaintiff also alleges that, from August 2022 through March 2023, he was routinely excluded from meetings, publicly belittled, and criticized by his supervisor. *Id.* ¶ 21. But the factual examples offered in support of those allegations do not plausibly suggest discrimination based on disability. For example, Plaintiff alleges that he was assigned work during a company luncheon and was limited in the amount of time he could attend a company Christmas party. *Id.* ¶ 22. He does not allege that similarly situated non-disabled employees were treated more favorably under comparable circumstances, nor does he otherwise plead facts to support a reasonable inference that these actions were motivated by disability-based animus. Plaintiff's allegations fail to state a plausible claim for disability-based disparate treatment.

Thus, Counts I and III must be dismissed for failure to state any timely and plausible disability discrimination claim under the ADA or MFEPA.

**C. Counts IV and V: Failure to Accommodate**

In Counts IV and V, Plaintiff alleges that Defendant discriminated against him by failing to accommodate his disability in violation of the ADA and MFEPA. Specifically, Plaintiff alleges that after reinjuring his back on April 21, 2023, and filing for workers' compensation benefits, Defendant failed to respond to his request for a reasonable accommodation and ultimately terminated his employment. Compl. ¶¶ 58–59, 66–67. As explained below, Plaintiff fails to state any plausible claim for relief in Counts IV and V.

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. §

12112(b)(5)(A); *see also Holmes v. Gen. Dynamics Mission Sys., Inc.*, 382 F. Supp. 3d 529, 532 (W.D. Va. 2019), *aff'd*, 835 F. App'x 688 (4th Cir. 2020) (quoting *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008)) ("An employer must 'make reasonable accommodations for an applicant or an employee's disability.'"). Similarly, the MFEPA requires employers "to make a reasonable accommodation for the known disability of an otherwise qualified employee[.]" Md. Code Ann., State Gov't § 20-606(a)(4).

"To state a claim for failure to accommodate under the ADA, Plaintiff must allege '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 484 (D. Md. 2015) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)); *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). To establish that he is a qualified individual, "the Plaintiff must prove that (a) he was disabled when discharged and (b) he was qualified to perform the essential functions of his position." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 622 (D. Md. 2014) (citations omitted); *see also* 42 U.S.C. § 12111(8) (providing that an individual is "qualified" for purposes of the ADA when, "with or without reasonable accommodation," the individual "can perform the essential functions of the employment position that such individual holds or desires"). "The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 236 (4th Cir. 2016) (quoting 42 U.S.C. § 12102(1)). For purposes of § 12102(1), "major life activities include, but are not limited to, caring

for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff's allegations fall short. Although the Complaint identifies certain physical limitations associated with Plaintiff's back and knee injuries, it contains no factual allegations describing the essential functions of a cable splicer position. Nor does Plaintiff allege facts showing how his requested accommodations would have enabled him to perform those essential functions. Instead, Plaintiff merely asserts in conclusory fashion that he was "able to perform the essential functions of his position as a cable splicer, with or without reasonable accommodation." Compl. ¶¶ 60, 69. Standing alone, without factual support, this conclusory allegation is insufficient to support a plausible claim for failure to accommodate. *See Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation omitted) ("While we must accept the factual allegations in the complaint as true, we need not accept a complaint's legal conclusions. Thus, simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard."). Plaintiff's Complaint merely recites the elements of the cause of action. Without factual allegations concerning the essential functions of Plaintiff's position, the nature of his physical limitations, and how the requested accommodations would have permitted him to perform the work required of the position, the Court cannot reasonably infer that Plaintiff was a qualified individual entitled to accommodation under the ADA or MFEPA. *See Rubino*, 44 F. Supp. 3d at 622–23 (dismissing failure-to-accommodate claim where the complaint failed to allege facts demonstrating that plaintiff could perform the essential functions of the position with a reasonable accommodation); *Munoz v. Balt. Cnty.*, Civ. No. RDB-11-02693, 2012 WL 3038602, at *8 (D. Md. July 25, 2012) (quoting *Iqbal*, 556 U.S. at 678) ("As '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice' to plead a claim, . . . Plaintiff's bare assertions that he 'can perform all of the essential functions' and is a 'qualified individual' fail to state a claim that he is qualified.").

Moreover, the Complaint does not identify with any specificity the accommodation Plaintiff requested following his April 2023 injury. Plaintiff alleges generally that Defendant failed to respond to a request for accommodation, but he does not allege what accommodation he sought, when he requested it, or why it would have been reasonable under the circumstances. These omissions provide additional grounds for dismissal. The Complaint need not be exhaustive in detail, but it requires sufficient facts to support a reasonable inference that Plaintiff "is entitled to relief.'" *View Point Med. Sys.*, 9 F. Supp. 3d at 596 (citation omitted).

The Court concludes that Plaintiff has failed to plead a plausible failure-to-accommodate claim under either the ADA or the MFEPA, and Counts IV and V must be dismissed.

**D. Counts VI and VII: Race and National Origin Discrimination**

In Counts VI and VII, Plaintiff alleges that Defendant discriminated against him based on his race (Hispanic) and national origin (Puerto Rico) in violation of Title VII. Both claims are subject to dismissal.

As an initial matter, Plaintiff failed to exhaust his administrative remedies. As explained in Part III.A.2 *supra*, before a plaintiff brings suit in federal court under Title VII, he must first present the claim to the EEOC. The scope of a subsequent civil action is limited to "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Here, Plaintiff's October 15, 2023, EEOC charge (Charge 2) alleged retaliation for engaging in protected activity—namely, filing a prior EEOC charge alleging disability

discrimination (Charge 1). ECF No. 24-5. Charge 2 states that Plaintiff filed an EEOC complaint alleging disability discrimination, was thereafter subjected to exclusion from meetings and events and to criticism and harassment by his supervisor, was suspended, and was ultimately terminated. *Id.* Critically, Charge 2 contains no allegation that any adverse action was motivated by Plaintiff's race or national origin, nor any discriminatory comments or conduct related to those protected characteristics. Because the EEOC charge at issue alleged only retaliation arising from disability-related protected activity, a reasonable investigation of that charge would not be expected to uncover claims of race- or national origin-based discrimination. Therefore, Counts VI and VII exceed the scope of Plaintiff's administrative charge, are unexhausted, and must be dismissed.

Even if Plaintiff exhausted the claims asserted in Counts VI and VII, they fail for insufficient pleading. "Title VII prohibits all discrimination in employment based upon race[] . . . and national origin." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (citing 42 U.S.C. § 2000e–2). To survive a motion to dismiss, Plaintiff must allege enough facts to permit a reasonable inference that his employer took adverse employment actions against him because of a Title VII-protected characteristic, such as race or national origin. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Plaintiff fails to do so here. The Complaint alleges in conclusory fashion that "similarly situated non-Hispanic employees" and "similarly situated non-Puerto Rican employees" "were not subjected to the same or similar adverse employment actions that Plaintiff endured," such as "unwarranted discipline[,]" "a higher standard [of] job performance, . . . public criticism," denial of "reasonable accommodations under the ADA," and retaliation. Compl. ¶¶ 75, 83. But Plaintiff does not identify any similarly situated employee outside Plaintiff's protected classes, describe any such comparator's position or responsibilities, or allege facts to show that any such

comparator was treated more favorably under comparable circumstances. Nor does Plaintiff allege any race- or national origin-based comments, policies, or conduct from which discriminatory intent could be reasonably inferred. Plaintiff's conclusory allegations of disparate treatment are insufficient. *See Booth v. Leggett*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (dismissing discrimination claims where the plaintiff failed to allege facts identifying similarly situated employees outside the protected class who were treated more favorably). Because the Complaint does not plead facts giving rise to a plausible inference of race- or national origin-based disparate treatment, Counts VI and VII fail to state a claim upon which relief can be granted under Title VII.

Accordingly, Counts VI and VII are dismissed.

### E. Count VIII: Employment Discrimination and Interference with Medical Accommodations Under the MFEPA

Plaintiff alleges in Count VIII that Defendant "discriminated against [him] in the terms and conditions of his employment on the basis of race, national origin and disability as well as interfered with Plaintiff's medical accommodations in violation of [the MFEPA]." Compl. ¶ 91. Plaintiff pleads no additional facts in support of this claim and instead offers only a conclusory recitation of the alleged statutory violations. As explained in Part III.D *supra*, Plaintiff has failed to exhaust and failed to allege facts to support any timely race- or national origin-based discrimination claim. And likewise, as explained in Parts III.B and III.C *supra*, Plaintiffs has failed to allege sufficient facts to support any plausible and timely disability-based discrimination or failure-to-accommodate claim. Because Count VIII merely reasserts the deficient claims asserted in other counts without providing any further factual support, it fails to state a claim upon which relief can be granted and must be dismissed.

### F. Counts IX and X: Hostile Work Environment

Counts IX and X fare no better. In these counts, Plaintiff asserts a claim for discriminatory hostile work environment in violation of Title VII and the MFEPA, respectively.[4] To state a claim for a discriminatory hostile work environment under Title VII, a plaintiff must allege that there was "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation and internal quotation marks omitted). "Courts apply Title VII precedent . . . to employment discrimination claims brought under the MFEPA as well." *Watrous v. AIRtec, Inc.*, Civ. No. TJS-24-2076, 2025 WL 2494324, at *5 (D. Md. Aug. 28, 2025) (citing *Passwaters v. Wicomico Cnty*., Civ. No. RDB-18-2923, 2019 WL 6341623, at *25 (D. Md. Nov. 27, 2019)).

Plaintiff alleges no facts connecting any severe or pervasive harassment he endured to any Title VII- or MFEPA-protected class or to his prior EEOC activity. Plaintiff asserts that, from August 2022 to March 2023, he was excluded from meetings, publicly belittled, criticized by his supervisor, and prevented from attending certain workplace events. Compl. ¶¶ 21–22. But Plaintiff does not allege that any supervisor or coworker made comments regarding his disability, his medical restrictions, his Hispanic or Puerto Rican heritage, or his EEOC charge. Plaintiff alleges generally that he was treated differently than similarly situated employees outside his protected classes, but, as explained in Parts III.B and III.D *supra*, the Complaint does not include enough

[4] The headers for Counts IX and X both refer to disability discrimination, and Count IX expressly relies upon Title VII. *See* Compl. at 18–19. But "disability . . . is not a protected class under Title VII." *Thompson v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. SAG-23-01449, 2024 WL 943437, at *7 (D. Md. Mar. 5, 2024); *see also Crow v. McElroy Coal Co.*, 290 F. Supp. 2d 693, 700 (N.D.W.Va. 2003), *aff'd*, 77 F. App'x 649 (4th Cir. 2003); *Corey v. Aldora Aluminum & Glass Prods., Inc.*, No. 2:19-CV-1523-SAL, 2021 WL 4145880, at *2 (D.S.C. Sept. 13, 2021) (citing 42 U.S.C. § 2000e-2). Insofar as Plaintiff intends to assert a disability-based hostile work environment claim under Title VII, that claim fails as a matter of law.

facts to support Plaintiff's conclusory allegations of disparate treatment. Counts IX and X are subject to dismissal on these grounds. *See, e.g.*, *Lee v. Korea Innovation Ctr.*, No. 1:25-CV-635 (RDA/WEF), 2026 WL 687183, at *12 (E.D. Va. Mar. 11, 2026) ("Plaintiff has failed to allege sufficient facts to connect any of the conduct of which she complains to her [protected characteristic]."); *Ghumman v. Boeing Intel. & Analytics, Inc.*, Civ. No. SAG-23-3371, 2025 WL 213971, at *4 (D. Md. Jan. 16, 2025) ("Plaintiff still has failed to plead facts establishing the requisite severe and pervasive conduct based on her status in any protected class.").

Even if Plaintiff had adequately pleaded that the unwelcome conduct he received was based on his membership in a protected class, the unwelcome conduct described in the Complaint falls short of the "severe or pervasive" standard. The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. A court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (cleaned up). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*,

524 U.S. 775, 788 (1998)). *See also Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.").

The unwelcome conduct alleged in the Complaint consists primarily of exclusion from meetings and social events, criticism of work performance, public belittlement, and increased supervisory scrutiny. The Complaint is silent as to frequency and severity of the alleged belittlement and criticism and whether any of the unwelcome conduct "unreasonably interfere[d] with [Plaintiff's] work performance." *Perkins*, 936 F.3d at 208. While the conduct described in the Complaint may have been unpleasant or frustrating, courts have repeatedly held that workplace slights, personality conflicts, criticism from supervisors, and exclusion from meetings do not, without more, amount to an objectively hostile work environment. *See Sunbelt Rentals*, 521 F.3d at 315–16; *Spiller-Holtzman v. Univ. of Maryland, Baltimore*, 805 F. Supp. 3d 602, 622 (D. Md. 2025), *appeal dismissed sub nom. Spiller-Holtzman v. Univ. of Maryland*, No. 25-2243, 2026 WL 1049164 (4th Cir. Mar. 5, 2026) (explaining that workplace interactions which are merely "disrespectful, frustrating, critical, and unpleasant" do not create a hostile work environment (quoting *Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, Civ. No. JKB-19-155, 2019 WL 6130947, at *3 (D. Md. Nov. 19, 2019))). The facts alleged in the Complaint, viewed in their totality, do not support a reasonable inference that the unwelcome conduct Plaintiff received was "sufficiently severe or pervasive to alter [Plaintiff's] conditions of employment and to create an abusive work environment[.]" *Okoli*, 648 F.3d at 220.

For each of the foregoing reasons, Plaintiff's hostile work environment claims in Counts IX and X must be dismissed.

**G. Counts XI, XII, and XIII: Retaliation**

Counts XI through XIII allege workplace retaliation in violation of Title VII and the MFEPA. "Title VII forbids . . . retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII." *Strothers*, 895 F.3d at 327 (citing 42 U.S.C. § 2000e–3). The statute also forbids "retaliat[ion] against an employee for participating in an ongoing investigation or proceeding under Title VII[.]" *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e–3). Protected participation includes "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citing 42 U.S.C. § 2000e–3). Similarly, "MFEPA prohibits an employer from . . . retaliating 'against any of its employees" because that individual has either 'opposed any practice prohibited by [MFEPA]' or 'made a charge testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA].'" *Hanke v. United Parcel Serv., Inc.*, Civ. No. JRR-23-2130, 2024 WL 3554973, at *4 (D. Md. July 26, 2024) (citing Md. Code Ann., State Gov't § 20-606(f)). A prima facie case of retaliation requires a plaintiff to establish "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman*, 54 F. 4th at 212 (citation omitted). The elements of a prima facie claim of retaliation under the MFEPA are identical to those under Title VII. *See Barreto v. SGT, Inc.*, 826 Fed. App'x 267, 271 (4th Cir. 2020).

Defendant argues that Plaintiff's Complaint fails to allege a causal connection between any protected activity and any adverse action by Defendant. ECF No. 24-1 at 22. Additionally, Defendant argues that Plaintiff does not allege any conduct by Defendant that was materially adverse. *Id.* at 23. Defendant's arguments are unpersuasive. Taking Plaintiff's allegations as true, Plaintiff alleges each element of a plausible retaliation claim.

First, Plaintiff alleges that he participated in activity protected by Title VII and the MFEPA and opposed practices that he reasonably suspected to violate those employment discrimination statutes. Specifically, he alleges that he filed an EEOC charge alleging discrimination and retaliation on February 12, 2022 (Charge 1). Compl. ¶ 16; ECF No. 24-3. In Charge 1, Plaintiff alleged that he endured discrimination based on both disability and race, complained about race discrimination internally, and suffered retaliation as a result. *See* ECF No. 24-3. While it is plain that "disability . . . is not a protected class under Title VII[,]" *Thompson*, 2024 WL 943437, at *7, Title VII certainly forbids both workplace discrimination based on race, *see* 42 U.S.C. § 2000e–2(a), and workplace retaliation for lodging complaints about race discrimination, *see* 42 U.S.C. § 2000e–3(a). And disability is a protected category under the MFEPA. Md. Code Ann., State Gov't § 20-606(a)(1)(i). Defendant does not dispute that Charge 1 was a protected activity under Title VII and the MFEPA.

Second, Plaintiff alleges materially adverse employment actions. For purposes of a retaliation claim, the employer's adverse action must be "materially adverse"—that is, sufficiently adverse to dissuade a reasonable employee from engaging in activities protected by the statute. *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2005). Here, following his filing of Charge 1 with the EEOC, Plaintiff alleges that he was subjected to increased scrutiny, excluded from meetings and workplace events, indefinitely suspended in April 2023, issued disciplinary sanctions, and ultimately terminated in May 2023. Compl. ¶¶ 20–31. Suspension and termination plainly qualify as materially adverse actions. *See, e.g.*, *Gagnon*, 2026 WL 1584459, at *8 ("[A] termination qualifies as a materially adverse action." (citing *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003))); *Tsige v. Marriott Hotel Servs., Inc.*, Civ. No. GJH-18-2341, 2019 WL 2904665, at *3 (D. Md. July 5, 2019) ("[Plaintiff's] suspension and termination were unquestionably adverse

employment actions."); *Qiydaar v. People Encouraging People, Inc.*, Civ. No. ELH-17-1622, 2018 WL 3458310, at *14 (D. Md. July 17, 2018) ("Termination is certainly an adverse action, not only in the discrimination contexts, . . . but also in the retaliation contexts, where the standard for adversity is easier to meet." (citations omitted)).

Third, Plaintiff alleges a plausible causal connection between his protected activity and the challenged actions. Plaintiff alleges a continuing pattern of retaliatory conduct beginning shortly after he filed Charge 1 and continuing through the time of his discharge. *See* Compl. ¶¶ 18, 20–31. According to the Complaint, after Plaintiff filed Charge 1, his supervision transferred to Curtis Wilson, and he began experiencing exclusion from meetings, denial of workplace opportunities, increased criticism, and heightened scrutiny after filing the EEOC charge. Compl. ¶¶ 17–22. He further alleges that, after reporting the April 7, 2023, incident involving his supervisor and complaining to Human Resources, Defendant subjected him to an allegedly pretextual investigation, suspended him indefinitely, pursued disciplinary action, and terminated his employment within a matter of weeks. *Id.* ¶¶ 24–31. Although discrete acts of retaliation Plaintiff suffered before December 19, 2022, are time barred, the Complaint alleges several materially adverse acts by Defendant—including suspension and termination—with plausible connection through the sequence of events dating back to Charge 1. At the pleading stage, Plaintiff's allegations are sufficient to permit a reasonable inference of retaliatory causation.

In sum, Plaintiff alleges sufficient facts to state plausible retaliation claims under Title VII and the MFEPA. Accordingly, Defendant's motion to dismiss Counts XI through XIII are denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED IN PART and DENIED IN PART. Counts XI through XIII shall proceed. All remaining counts shall be dismissed. The Court shall issue a separate Order consistent with this Memorandum Opinion.

August 24, 2026
Date

/S/
Matthew J. Maddox
United States District Judge