**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIAN MARRERO, SR.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-24-3311** |
| **VERIZON MARYLAND LLC,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiff Brian Marrero, Sr.'s ("Plaintiff") Motion for Leave to File First Amended Complaint. ECF 35. By Memorandum Opinion and Order dated August 24, 2026, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's Complaint, dismissed Counts I through X under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to allege sufficient facts to support timely and plausible claims for relief, and sustained Counts XI through XIII. ECF 29 & 30. The Court incorporates here the factual and procedural background outlined in Part I of its Memorandum Opinion. *See* ECF 29 at 1–5. Plaintiff now moves to amend his Complaint to cure pleading deficiencies identified in the Court's Memorandum Opinion. ECF 35. Defendant Verizon Maryland LLC filed a response in opposition to the motion, ECF 37, and Plaintiff filed a reply, ECF 38. No hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained below, Defendant's motion shall be granted.

## I. Whether Counts I Through X Are Fully Adjudicated

Defendant argues first that the Court's dismissal of Counts I through X constitutes a full adjudication because the Court did not state whether the dismissal was with or without prejudice, and dismissal with prejudice is the default rule under Federal Rule of Civil Procedure 41(b). ECF 37 at 2–4; *see also R.A. v. McClenahan*, 122 F.4th 143, 147 (4th Cir. 2024) ("[A] dismissal 'for failure to state a claim is with prejudice unless the court specifically orders dismissal without prejudice.'") (quoting *Ostrzenski v. Seigel*, 177 F.3d 245, 248 (4th Cir. 1999)); *Harrison v. Edison Bros. Apparel Stores*, 924 F.2d 530, 534 (4th Cir. 1991) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.") (quoting *Schwarz v. Folloder,* 767 F.2d 125, 129 (5th Cir. 1985)). In reply, Plaintiff argues that the Court has discretion to treat Plaintiff's motion for leave to amend as a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the dismissal with prejudice. ECF 38 at 2–3.

First, Rule 59(e) is not the proper vehicle for the Court to alter or amend its dismissal of Counts I through X because that dismissal was an interlocutory judgment, and "Rule 59(e) . . . applies only to final judgments." *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)); *see also Menk v. Mitre Corp.*, No. 1:23-CV-00053-JRR, 2025 WL 1919941, at *1 (D. Md. July 11, 2025) ("Rules 59(e) and 60(b) do not apply to interlocutory orders.") (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)). "Orders 'that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Menk*, 2025 WL 1919941 at *1 (quoting Fed. R. Civ. P. 54(b)). Because the Court's

Order of partial dismissal "did not adjudicate all claims, rights, and liabilities of the parties[,]"[1] it is properly "assessed under Rule 54(b)[,]" not Rule 59(e). *Id.* (citing *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)).

Whether to alter or amend an interlocutory order under Rule 54(b) "is committed to the discretion of the district court[.]" *Am. Canoe Ass'n*, 326 F.3d at 515 (citation omitted). It is well established that "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Id.* at 514–15 (citation omitted). "A motion for reconsideration of an interlocutory order is 'not subject to the strict standards applicable to motions for reconsideration of a final judgment' under Rules 59(e) and 60(b)." *Menk*, 2025 WL 1919941, at *1 (quoting *Am. Canoe Ass'n*, 326 F.3d at 514). "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson*, 856 F.3d at 325 (quoting *Am. Canoe Ass'n*, 326 F.3d at 515). The court may also "look[] to the standards applicable to relief afforded under Rules 59(e) and 60(b) for guidance in considering Rule 54(b) motions." *Menk*, 2025 WL 1919941, at *1 (citing *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018)). The proper goal "is to reach the correct judgment under law." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618–19 (D. Md. 2013) (citation omitted).

The Court finds it proper to amend its Order of partial dismissal to clarify that the dismissal of Counts I through X in the original Complaint are without prejudice. "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (quoting *180s, Inc. v. Gordini*

[1] The Court dismissed Counts I through X but sustained Counts XI through XIII. *See* ECF 29 at 24; ECF 30.

*U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009); *see also Payne v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). It is widely accepted among district courts that, "[w]hen a plaintiff fails to state a claim, he 'should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice.'" *Weigel*, 950 F. Supp. 2d at 825–26 (quoting *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674–76 (S.D. Tex. 2010)). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Weigel*, 950 F. Supp. 2d at 825 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). So, dismissal without prejudice, and with an opportunity to amend, is generally the proper course when a plaintiff's initial complaint fails to state a plausible claim for relief but the pleading deficiencies may be cured with additional facts.

Here, the Court did not expressly dismiss Counts I through X with prejudice; it simply omitted stating whether the dismissal was with or without prejudice. As Plaintiff points out, in opposition to Defendant's motion to dismiss, he initially requested leave to amend his Complaint in the alternative to denying Defendant's motion, ECF 38 at 3 (citing ECF 13 at 6 and ECF 27 at 8), and the Court did not address that request in its Memorandum Opinion or Order. For the Court's omission, and the pleading deficiencies in Plaintiff's initial Complaint, to effect a "complete adjudication of the issues presented" in the dismissed counts and to bar any further litigation between the parties on those issues, *Harrison*, 924 F.2d at 534 (citation omitted), would be a "manifest injustice[,]" in this Court's view, *Carlson*, 856 F.3d at 325 (citation omitted). Therefore, relief from the dismissal of Counts I through X with prejudice to provide an opportunity to amend those counts is warranted under Rule 54(b).

## II. Whether Leave to Amend Should be Granted

As to the merits of Plaintiff's motion, Defendant argues that leave to amend should be denied because Plaintiff's proposed amendment is futile and would unduly prejudice Defendant. ECF 37 at 4–8. The Court disagrees. Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Based on this rule, the Fourth Circuit has endorsed a liberal approach to granting motions for leave to amend. The court has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and internal quotation marks omitted). However, leave to amend should be denied as futile when the proposed amended complaint is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citation omitted). Here, the Court cannot find that Plaintiff's proposed First Amended Complaint ("FAC") is "clearly insufficient or frivolous on its face[,]" *id.*, or that it would unduly prejudice Defendant.

In his proposed FAC, Plaintiff offers many additional facts in support of his claims under the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Maryland Fair Employment Practices Act ("MFEPA") for failure to accommodate and workplace discrimination based on disability, race, and national origin. Plaintiff states that he is "an Hispanic male individual from Puerto Rico, and a disabled veteran" who sustained injuries while on active military duty and while employed with Defendant. ECF 35-2, ¶¶ 1, 12. Plaintiff sustained a back injury—specifically, "three ruptured discs"—on the job in 2020. *Id.* ¶¶ 12, 23. His role as a fiber installation technician for Defendant "required long periods of squatting, kneeling, staying bent over, climbing up and down stairs, heavy lifting, and working off

ladders for long periods of time." *Id.* ¶ 10. Plaintiff "explain[ed] to management that the constant bending over the run wire along baseboards from room to room was taking a toll on his physical health and that he could not work as fast as they were demanding[.]" *Id.* ¶ 84. Thereafter, and "continuously," Plaintiff requested the accommodation of being assigned "copper maintenance work," "inside work," and "light duty" that required fewer physical activities precluded by his injuries, but he was denied these accommodations. *Id.* ¶¶ 10–13, 23, 84. Still, "other non-Hispanic employees, similarly situated, were granted their requested accommodations where Plaintiff was not." *Id.* ¶ 85. Plaintiff identifies by name several Caucasian co-workers "in the same job function" and "in the same department" who "were allowed to do light duty for back injuries whereas Plaintiff was not." *Id.* ¶ 23. "In or around January 2023," Plaintiff requested assignment as a technician to a "no light" crew, "which is the same as a cable technician on the copper side[,]" but this request was denied. *Id.* ¶¶ 14, 53. "[I]n or around February 2023," Plaintiff's second-level supervisor "hired a non-Hispanic, non-disabled individual, . . . even though Plaintiff had been told there were no openings." *Id.*

Additionally, from "in or around 2016, until [Plaintiff] was terminated on May 30, 2026," his supervisors "continuously" gave him and his only Hispanic co-worker jobs where Spanish-speaking customers could not speak English, even though neither Plaintiff nor his Hispanic co-worker spoke Spanish. *Id.* ¶¶ 108–10. These jobs would require Plaintiff and the co-worker "to use Google translate" to communicate with customers, which would result in them receiving "written warnings for the length of time it took to do the job" and "eventually" led to the co-worker's termination, leaving Plaintiff as "the only Hispanic in the organization." *Id.* ¶ 109. Plaintiff's non-Hispanic co-workers were not "required to do jobs where the subscriber didn't

speak English." *Id.* ¶ 110. Supervisors removed such jobs from the "job log" of non-Hispanic technicians and assigned these jobs to Plaintiff. *Id.*

The proposed FAC provides also additional details to support Plaintiff's claims for hostile work environment. According to Plaintiff, between approximately August 2021 and May 2023, he was placed on a "performance plan" that required additional work for him and "held [him] to a higher standard," even though he was later told by non-Hispanic co-workers[2] on performance plans that their plans did not alter their work responsibilities. *Id.* ¶¶ 158–59. Plaintiff contends that the plan was "used as a way to validate harassing behavior." *Id.* ¶¶ 159, 162. Specifically, "Plaintiff was frequently inspected on jobs," "two to three times a day[,]" with "the supervisors observing him from afar, without his foreknowledge[,]" while non-Hispanic co-workers "on the same plan were subject to two to three weekly inspections[.]" *Id.* ¶ 160. On several occasions, including in February 2023, management failed to send someone to assist Plaintiff when he "requested assistance due to not being able to physically manage the job," which ultimately "hurt [Plaintiff's] rework numbers . . . ." *Id.* ¶ 161. Although the performance plan required Plaintiff's supervisors to meet with Plaintiff each month to discuss any performance problems and areas that needed improvement, Plaintiff's supervisors failed to conduct these meetings, and Plaintiff "was never removed from the performance plan even after making improvements[.]" *Id.* ¶¶ 159, 162.

Furthermore, the proposed FAC details how Plaintiff's non-Hispanic direct supervisor disparaged and alienated Plaintiff among his co-workers, denied him equipment necessary for him to complete jobs in a timely manner, and denied him the same amount of time provided to other technicians "to clean and stock his vehicle," which negatively impacted his "work matrix[]." *Id.* ¶¶ 163–67 (footnote omitted). "In or around November 2022," Plaintiff's supervisor moved him to

[2] Plaintiff alleges that he was "the only Hispanic in his work location," during the relevant period. ECF 35-2, ¶ 158.

another work station or "garage" that increased his commute time and the time Plaintiff had "to get to and complete his jobs[.]" *Id.* ¶ 169. When Plaintiff pointed out that he was treated differently that specific non-Hispanic technicians, the other technicians were also moved to the same garage, which increased the alienation and hostility Plaintiff suffered from his co-workers. *Id.* Between approximately September 2022 and April 2023, when Plaintiff had trouble completing a job for lack of a bucket truck, "he usually wouldn't get help[,]" apparently because "[m]any of the technicians did not want to work with Plaintiff" due to his alienation and his supervisor's disparagement. *Id.* ¶ 168. In or around January 2023, a technician told Plaintiff that his second-level supervisor had a meeting with other supervisors during which he called for Plaintiff's suspension "for anything," and, thereafter, Plaintiff's direct supervisor suspended him four times. *Id.* ¶ 170. Between February 2023 and May 2023, Plaintiff's interactions with his direct supervisor were consistently fraught with conflict. *Id.* ¶¶ 171–73. Their conflicts culminated in a physical altercation in April 2023, *id.* ¶ 172, and, thereafter, the supervisor "would follow Plaintiff around, the entire time on the job site, yelling at Plaintiff[,]" *id.* ¶ 173. Plaintiff's employment was suspended and terminated on May 30, 2023. *Id.* ¶¶ 43–44.

Combined with the facts retained from the original Complaint, *see* ECF 29 at 1–5, the forgoing facts added in the proposed FAC are not "clearly insufficient" to state timely claims for unlawful failure to accommodate; workplace discrimination based on disability, race, and national origin; and discriminatory hostile work environment. *Johnson*, 785 F.2d at 510; *see also* ECF 29 at 11, 13, 16, 18 (summarizing elements of disability discrimination, failure to accommodate, race and national-origin discrimination, and hostile work environment, respectively, with citation to authorities).

Defendant argues that "all new factual allegations in the proposed amended Complaint concern events before December 19, 2022,[3] and thus remain untimely[,]" ECF 37 at 5, and "many of the new allegations were never raised during the administrative process and are therefore procedurally barred," *id.* at 6. First, Defendant is factually mistaken. The alleged events of January and February 2023—where Plaintiff was denied assignment to the "no light" crew and was told that his second-line supervisor called for his suspension "for anything"—post-date December 19, 2022, and were not alleged in the initial Complaint. *See* ECF 35-2, ¶¶ 14, 144, 170. Plaintiff also provides additional details as to the frequency and severity of the harassment he allegedly suffered from his supervisors, continuing into 2023, that were not included in the initial Complaint. *See id.*, ¶¶ 132–47, 158–73. While it is true that several of the events detailed in the proposed SAC concern events that occurred before December 19, 2022, plaintiffs may offer events that occurred before the 300-day period "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*¸ 536 U.S. 101, 113 (2002); *see also Membreno v. Atlanta Rest. Partners*, 517 F. Supp. 3d 425, 437 (D. Md. 2021).

Defendant cites no legal authority for the proposition that Plaintiff is "procedurally barred" from presenting allegations in support of timely claims of employment discrimination merely because the allegations did not appear in Plaintiff's administrative charge. ECF 37 at 6–7. As the Court noted in its prior Memorandum Opinion, *see* ECF 29 at 9–10, the allegations in an administrative charge "generally operate to limit the scope of any subsequent judicial complaint." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). But a federal court

[3] December 19, 2022, is 300 days before Plaintiff filed his relevant administrative charge of discrimination on October 15, 2023. In its prior Memorandum Opinion, the Court found that "only allegations of misconduct that occurred on or after December 19, 2022, (300 days before October 15, 2023) are timely under Title VII, the ADA, and the Rehabilitation Act[,]" and "the same time limitation applies to non-harassment claims brought under the MFEPA." ECF 29 at 9 (citations omitted).

may hear an allegation that was not presented in an administrative charge if it is "reasonably related" to the administrative charge and "[could] be expected to follow from a reasonable administrative investigation." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 252 (D. Md. 2023) (cleaned up); *see also Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022). It is not clear to this Court that any of the new allegations detailed in the proposed FAC are not so "reasonably related" to Plaintiff's administrative charge.

Finally, the Court does not find that the proposed FAC would unduly prejudice Defendant. The only prejudice identified by Defendant is the potential need to "relitigate issues . . . ." ECF 37 at 8. But the proposed FAC significantly increases and expand upon the factual grounds for Plaintiff's claims in a good-faith effort to address pleading deficiencies identified by Defendant in support of its prior motion to dismiss and in this Court's subsequent Memorandum Opinion. Another motion to dismiss would not call for mere relitigation of issues examined in connection with Defendant's prior motion. Defendant also argues that permitting amendment would "unfairly grant Plaintiff a second chance to plead" his claims, but such a "second chance" is common in federal court and contemplated in Rule 15(a)'s requirement that leave to amend be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court finds that justice requires granting Plaintiff leave to amend.

Accordingly, it is by the United States District Court for the District of Maryland, hereby ORDERED that:

1. The Court's Order of August 24, 2026, (ECF 30) is AMENDED to dismiss Counts I through X of the initial Complaint WITHOUT PREJUDICE;
2. Plaintiff's Motion for Leave to File a First Amended Complaint (ECF 35) is GRANTED;

3. The Clerk SHALL ENTER the proposed First Amended Complaint (ECF 35-1) as Plaintiff's operative pleading in this matter.

It is so ORDERED this 13th day of October, 2026.

/S/

Matthew J. Maddox
United States District Judge